612 So.2d 155 (1992)
Joan Martinez, Wife of/and Lionel R. SERIGNE, d/b/a Serigne's Marina
v.
Douglas M. WILDEY, Sr., Concrete Bulkheads, Inc., Shoreline Specialties, Inc., Pelican State Mutual Ins. Co., Keith Tassin and Darlene Tassin.
No. 91-CA-895.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1992.
Writ Denied March 12, 1993.
Robert G. Creely, Gretna, for plaintiffs-appellees.
*156 Vance E. Ellefson, Valerie A. Young, Baline A. Moore, Metairie, Daniel L. Morrow, Gretna, Anthony J. Livacarri, Jr., New Orleans, J. Wayne Mumphrey, George N. Bischof, Jr., Chalmette, for defendants-appellees.
Carl J. Hebert, Mark A. Myers, Metairie, for defendant-appellant.
Before GAUDIN, GOTHARD and CANNELLA, JJ.
GAUDIN, Judge.
Mr. and Mrs. Lionel Serigne, d/b/a Serigne's Marina, contracted with Shoreline Specialties, Inc. for construction of a concrete marina, including a dock, boat slips, sheds, etc., on Bayou Terre Aux Beoufs near Delacroix in St. Bernard Parish. When nearly completed, the entire structure collapsed into the bayou.
The Serignes filed suit in the 24th Judicial District Court, naming among the defendants the Pelican State Mutual Insurance Company, which had issued a commercial general liability policy to Shoreline Specialties.
A district court judgment found (1) that the marina's slipping into the bayou was an occurrence within the scope and meaning of the policy and (2) that exclusions were not applicable. We affirm, considering the policy's wording and the unique facts and circumstances of this case.
The amount of the district court award to the Serignes, $251,313.00, was not contested nor were other parts of the May 23, 1991 judgment. At the conclusion of a five-day jury trial, the trial judge directed a verdict in favor of insurance coverage. The jury then awarded $264,540.00 to the Serignes but found them five per cent at fault. Shoreline Specialties was found 95 per cent responsible.
Louisiana jurisprudence and the Civil Code are clear concerning coverage and policy exclusions. Insurance policies must be liberally construed in favor of coverage, and provisions susceptible of different meanings have to be interpreted with a meaning that renders coverage effective. Any ambiguity must be construed against the insurance company and in favor of reasonable construction affording coverage. See RPM Pizza, Inc. v. Automobile Cas. Ins. Co., 601 So.2d 1366 (La.1992); and LSA-C.C. art. 2049, which states:
"A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."
Testimony in the instant case indicates that the heavy concrete marina fell into the water at least in part because erroneously placed land fill eroded, placing excess pressure on the bulkhead. Other testimony implied that Shoreline Specialties did not properly construct the tie-back system and that the company neither strengthened nor secured the pilings adequately. Further testimony charges Shoreline Specialties with failing to consider tidal fluctuation. In any event, Pelican argues that faulty construction and defective workmanship were not accidental and therefore not an occurrence within confines of the policy.
In the "Bodily Injury and Property Damage Liability" section of the policy, it is stated that the bodily injury or property damage must be caused by an "occurrence." An occurrence is described later in the policy as follows:
"Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Black's Law Dictionary, at page 30, says that in its most commonly accepted meaning, or in its ordinary or popular sense, an accident may be defined as a fortuitous circumstance event or happening, an event which under the circumstances is unusual or unexpected. An accident is further described as a mishap, a sudden and unexpected event taking place without expectation, or as "... something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence; the word may be employed as denoting a calamity, *157 casualty, catastrophe, disaster, an undesirable or unfortunate happening ..."
Under this broad definition, the marina's fall into the bayou was clearly an accident, and consequently an insured-against occurrence. The trial judge so found, remarking from the bench that "... this policy is at best overly confusing, absolutely ambiguous..."
Pelican cites several Louisiana cases suggestive of non-coverage, including Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3 Cir.1986); Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1 Cir.1982), writs denied at 429 So.2d 131 (La.1983); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4 Cir. 1980); Breaux v. St. Paul Fire and Marine Ins. Co., 345 So.2d 204 (La.App. 3 Cir.1977); Vobill Homes, Inc. v. Hartford Accident & Indemnity Co., 179 So.2d 496 (La.App. 3 Cir. 1965). In none of these cases, however, does the insurance cover an occurrence which is described in the policy as an accident. In Fredeman, for example, the general liability policy specifically covered damage to structures due to or caused by grading of land, excavating, burrowing, filling, backfilling, tunnelling, pile driving, cofferdam or caisson work, moving, shoring, underpinning, raising or demolition of any building or structure or rebuilding of any structural support thereof.
The Pelican policy insuring against occurrences described as accidental is unique. Almost all of the reported insurance cases in the state deal with much more precisely stated events and possible happenings, real or potential, covered by the policy. In Lombard v. Sewerage and Water Board of New Orleans et al, 284 So.2d 905 (La.1973), however, the Supreme Court of Louisiana, in a case involving 119 plaintiffs seeking damages caused by construction and installation of a drainage canal, found coverage although there was no exact statement of just what the applicable policy insured against. In that insurance policy, the word "occurrence" was substituted for "accident." The Court said at page 915 that the intention manifested by this was to broaden coverage. The Court then went on to say that:
"As a rational matter, however, it can hardly be said that this construction project lasting more than one year is a single `occurrence' within the contemplation of the quoted clause. Rather, we think it is more logical to view this project as a series of `occurrences' resulting in damages during the course of this prolonged undertaking. The word `occurrence' as used in the policy must be construed from the point of view of the many persons whose property was damaged. As to each of these plaintiffs, the cumulated activities causing damage should be considered as one occurrence, though the circumstances causing damage consist of a continuous or repeated exposure to conditions resulting in damage arising out of such exposure. Thus, when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned."
Likewise, the occurrences which caused the Serignes' marina to fail occurred over an extended period of time.
The exclusions relied on by Pelican are in various sections of the Serigne policy. In sections j(5) and j(6), it says that excluded from coverage is:
"Property damage to:
"(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf are performing operations if the `property damage' arises out of these operations; or
"(6) That particular part of any property that must be restored, repaired or replaced because `your work' was incorrectly performed..."
Further in the policy, in section "m," the following is excluded from coverage:
"Property damage to `impaired property' or property that has not been physically injured, arising out of:
"(1) A defect, deficiency, inadequacy or dangerous condition in `your product' or `your work,' or
"(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
*158 This exclusion, the policy goes on, does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
"Impaired property" is described in the policy thusly:
"Impaired property means tangible property other than `your product' or `your work' that cannot be used or is less useful because:
"(a) It incorporates `your product' or `your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
"(b) You have failed to fulfill the terms of the contract or agreement;
if such property can be restored to use by:
"(a) The repair, replacement, adjustment or removal of `your product' or `your work;" or
"(b) Your fulfilling the terms of the contract or agreement."
Are these exclusions ambiguous and/or in conflict with other segments of the policy defining coverage? The trial judge thought so and it is difficult for us to say this constitutes reversible error. See RPM Pizza, Inc. v. Automotive Casualty Insurance Company, supra, and also Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). In Garcia, the Supreme Court focused its attention on exclusionary provisions which the defendant said barred a claim by a high school cheerleader injured while performing an acrobatic stunt during a football game. The Court stated:
"Equivocal provisions seeking to narrow the insured's obligation are strictly construed against the insurer, since they are prepared by the insurer and the insured has no voice in the preparation."
Shoreline Specialties and its insurer are to bear costs of this appeal.
AFFIRMED.