674 So.2d 1125 (1996)
MIKE HOOKS, INC., Plaintiff-Appellant,
v.
JACO SERVICES, INC. and Acceptance Insurance Corporation, Defendant-Appellant.
No. 95-1485.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
Rehearing Denied July 3, 1996.
Hunter William Lundy, Lake Charles, James D. Cain Jr., Dry Creek, for Mike Hooks Inc.
Stephen Nolan Elliott, Howard Bruce Kaplan, Metairie, for Jaco Services Inc., et al.
A.R. Johnson IV, Lake Charles, for Acceptance Insurance Co.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
Plaintiff, Mike Hooks, Inc., and defendant, JACO Services, Inc., appeal the trial court's granting of JACO's insurer's, Acceptance Insurance Co., motion for summary judgment finding that the Comprehensive General Liability policy did not afford defendant coverage. We reverse and remand for further proceedings.

FACTS
On May 7, 1994, JACO Services, Inc. (JACO) was hired by Mike Hooks, Inc. (Hooks), a dredging company operating along the Gulf Coast, to perform repairs to the engine on the DREDGE 32. The work consisted of installing ten main bearings in the engine of the dredge, which required JACO to set the clearances and deflection readings of each bearing. JACO supervised and performed all hands-on work.
On June 3, 1994, after an engine inspection, Hooks again called JACO to perform work on the DREDGE 32's engine. After checking the clearances, JACO reshimmed the numbers two, three, four, and six main bearings. Upon completion of this work, Hooks put the dredge back in operation.
On August 9, 1994, JACO was called once again to inspect the bearings on the DREDGE 32's engine. The deflection and vertical clearances of the bearings of the Cooper Bessemer engine were checked, and upon closer inspection, it was discovered that the number three bearing was opened up and that the crank shaft was fractured. As a result of this fracture, Hooks was required to move the dredge from Morgan City, Louisiana, to its shipyard in Westlake, Louisiana. Hooks then had to modify another dredge, the MISSOURI H, and a booster and move them to the work site at Morgan City in order to complete the DREDGE 32's job.
*1126 Diagnostic tests performed on the engine of the DREDGE 32 revealed that 27 of the 32 main bearing caps and stud nuts were not torqued to the manufacturer's recommended tightness. Alleging that JACO failed to properly perform the work they were hired to do, Hooks filed suit on November 17, 1994, against JACO and Acceptance, the insurer of JACO under a Commercial General Liability (CGL) Policy No. CL279924.
In response, Acceptance filed a motion for summary judgment denying coverage. On July 18, 1995, the trial court issued a written opinion granting Acceptance's motion. The trial court found that the policy's work product exclusion precluded recovery of damages resulting from JACO's defective work or product.

ASSIGNMENT OF ERROR
Hooks and JACO allege that the trial court erred in granting Acceptance's motion of summary judgment finding that the Commercial General Liability policy issued by it did not cover the damage to the DREDGE 32's engine.

LAW
Appellate courts review summary judgments de novo applying the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). The interpretation of an insurance contract is a legal question that can be resolved through a motion for summary judgment. Cormier v. American Deposit Ins. Co., 95-865 (La.App. 3 Cir. 12/6/95), 664 So.2d 807. Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.
An insurer may limit its liability where such limitation is clearly set forth and the limitation does not violate public policy. Francis v. U.S. Fidelity & Guar. Co., 94-721 (La.App. 3 Cir. 3/8/95), 653 So.2d 45, writ denied, 95-1305 (La. 9/15/95), 660 So.2d 459. An insurance policy is a contract between the parties and should be interpreted by using the general rules of construction. Smith v. Matthews, 611 So.2d 1377 (La.1993). "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. An ambiguous provision of a contract must be interpreted against the party who furnished the provision. La.Civ.Code art. 2056. "[C]ourts have no authority to change or alter its (the contract's) terms under the guise of interpretation." Radar v. Duke Transportation Inc., 492 So.2d 532, 534 (La.App. 3 Cir.1986).

COVERAGE AND POLICY EXCLUSIONS
The policy at issue provides, under the "Limits of Insurance" section on the declarations page, that Acceptance will pay those sums that JACO becomes legally obligated to pay as damages resulting from bodily injury or property damage with a $1,000,000.00 general aggregate limit (other than products-completed operations), as well as $1,000,000.00 products-completed operations aggregate limit. It also provides for a $1,000,000.00 limit for each occurrence.
Acceptance contends that exclusion 2(l) precludes coverage for the harm complained of by Hooks. Exclusion 2(l) provides as follows:
2. Exclusions.
This insurance does not apply to:
* * * * * *
1. Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operation hazard"
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
*1127 The policy provides the following definitions pertinent to our discussion:
* * * * * *
12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * * * * *
14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
* * * * * *
15. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
* * * * * *
19. "Your work" means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b. The providing of or failure to provide warnings or instructions.

ANALYSIS
It is well settled that liability policies containing a work product exclusion similar to the one at issue does not provide coverage for the defective work or defective product of the insured. Parker v. Dubus Engine Co., 563 So.2d 355 (La.App. 3 Cir.1990); Kold, Inc. v. United States Fidelity & Guar. Co., 496 So.2d 1338 (La.App. 3 Cir.), writ denied, 498 So.2d 758 (La.1986). As an exception to this rule, JACO and Hooks cite Kidd v. Logan M. Killen, Inc., 93-1322 (La.App. 1 Cir. 5/20/94), 640 So.2d 616. In Kidd, the policy provided coverage for products-completed operations in the amount of $500,000.00. The policy also contained an exclusion for "`property damage' to `your product' arising out of it or any part of it," and "`property damage' to `your work' arising out of it." The court in Kidd stated:
After reviewing the record and the evidence submitted, we cannot say that there are no genuine issues of material fact as to coverage, nor can we say that reasonable minds must inevitably conclude that Safeco is entitled to judgment as a matter of law. The policy declarations clearly reveal that there is coverage for "products-completed operations hazard" up to the policy limits of $500,000.00. Moreover, in its appellate brief, Safeco unequivocally acknowledges that there is coverage for "products-completed operations."
While the language in the policy contains numerous provisions regarding the coverage, exclusions, and exceptions to the exclusions and may suggest that the damages sustained by the Kidds fall under the "products-completed operations" coverage of the policy, there are no provisions in the policy regarding this coverage, other than that contained in the definitions section of the policy.
Id. at 621.
We agree with our brethren in Kidd. The policy at issue here, similar to that found in Kidd, clearly provides $1,000.000.00 in coverage for products-completed operations and then attempts to exclude coverage for this in exclusion 2(1). Aside from the entry in the definition section of the policy for products-completed operations hazard, the only reference made to products-completed operations coverage is in exclusion 2(l). We are unable to find an unambiguous provision in this policy addressing what the products-completed *1128 operations coverage, as found on the declarations page, encompasses. As such, we find that the portions of the policy covering products-completed operations to be ambiguous. Therefore, we are constrained to interpret these terms in a light favoring coverage.
Accordingly, the judgment of the trial court is vacated and set aside. This matter is remanded for further proceedings consistent with this opinion and all costs of the motion for summary judgment and this appeal are assessed to Acceptance Insurance Co.; other costs to await final disposition.
REVERSED AND REMANDED.