879 So.2d 821 (2004)
Peter RANDO III and Anne Bodet Rando
v.
TOP NOTCH PROPERTIES, L.L.C. and Zurich Insurance Company/Assurance Company of America.
No. 2003-CA-1800.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 2004.
*824 J. Douglas Sunseri, Dawn Danna Marullo, Nicaud, Sunseri & Fradella, L.L.C., Metairie, LA, for Third-Party Plaintiff/Appellee.
Robert T. Myers, Young, Richaud & Myers, Metairie, LA, for Third-Party Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge TERI F. LOVE, Judge DAVID S. GORBATY and Judge LEON A. CANNIZZARO).
Chief Judge JOAN BERNARD ARMSTRONG.

REVERSED AND RENDERED IN PART AND REMANDED
Third party plaintiff-appellant, Dmitri Pile Driving, Inc. (Dmitri), appeals a summary judgment in favor of third party defendant-appellee, Century Surety Company (Century or Century Surety), dismissing Dmitri's claims for indemnity, defense, and damages for bad faith failure to defend and provide coverage. We reverse and render in part and remand.
On March 12, 2002, plaintiffs in the main demand, Peter Rando, III and Ann Bodet Rando, instituted a Petition to Rescind Contract of Sale for Redhibition and for Damages for Breach of Contract pertaining to the construction of their home at 4425 Olive Drive in Meraux, Louisiana. Named as original defendants were Top Notch Properties, L.L.C. and Zurich Insurance Company/Insurance Company of America. Plaintiffs purchased the property from Top Notch on September 9, 1998.
Top Notch filed an answer and third party demand, naming Dmitri[1], Technon Systems, Inc., Engineering Services, Inc., Assurance Company of America and Continental Insurance Company as third party defendants. Dmitri filed an answer to Top Notch's third party demand combined with a third party demand of its own against its insurer Century Surety.
Century denied coverage and refused to provide a defense to Dmitri, whereupon Dmitri filed a supplemental third party demand alleging that Century was in bad faith in refusing to defend Dmitri, which Century answered.
Next Dmitri filed a motion for summary judgment seeking indemnity and/or defense from Century. Century filed a counter motion for summary judgment denying coverage and any obligation to defend.
A hearing was held on August 8, 2003, pursuant to which the trial court granted Century Surety's motion for summary judgment and dismissed Century from the litigation. The trial judge designated the judgment as final and this appeal by Dmitri followed.
At the outset we wish to emphasize that a careful reading of the policy language is critical to the resolution of this case. We share the concern expressed by professors McKenzie and Johnson in 15 Civil Law Treatise (2d Ed.1996), § 186, at p. 380 that:

*825 In some cases, courts have misapplied policies by seizing upon conclusions in earlier cases without realizing that the policy language had been revised.
An insurance company may limit coverage in any manner, as long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. But it is hornbook law that insurance policies are to be read broadly in favor of coverage and any ambiguity is to be construed against the insurer. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991). Exclusionary provisions in insurance contracts are strictly construed against the insurer. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, judgment amended, (La.4/18/96), 671 So.2d 915. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Id. The fact that an insurance policy is a complex instrument requiring analysis does not render it ambiguous. Oxner v. Montgomery, 34,727, p. 6 (La.App. 2 Cir. 8/1/01), 794 So.2d 86, 90-91. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Ott v. LPK Systems, Inc., XXXX-XXXX (La.App. 4 Cir. 11/28/01), 812 So.2d 38, 41. Only if the language can reasonably be read to have more than one reasonable meaning can the language be said to be ambiguous. The insurer, in this case Century, bears the burden of proving that a loss comes within a policy exclusion. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La.1993).
Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969). The insurer's duty to defend suits is determined by the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Id. The allegations of the petition should be liberally construed in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit against its insured. Id. The duty to defend is not dependent upon the outcome of the suit. Id.

I. THE ALLEGATIONS OF STRUCTURAL DEFECTS IN THE RANDOS' PETITION CONSTITUTE AN "OCCURRENCE" UNDER THE POLICY
It is undisputed that Century provided occurrence coverage to Dmitri from December 11, 1998 through December 11, 2001. At the crux of this appeal is the statement by the trial judge in his written reasons for judgment that:
The original Plaintiffs in the Petition alleged that the first damage occurred on October 2, 1998. Therefore, the alleged property damage is deemed to have occurred on October 2, 1998.[[2]] *826 Accordingly, the alleged damage did not occur within the policy period of December 11, 1998 through December 11, 2001. [Emphasis added.]
This is an allusion to the allegations to be found in paragraph V of the original plaintiff's original petition:
Twenty-three (23) days after the sale on October 2, 1998, the house began having serious problems with the air conditioning/heating unit leaking and failing to work properly. On February 24, 1999, sink holes began to visually appear on the property and it was discovered that the plumbing was leaking. Additionally, the concrete, stucco and bricks were crackling and damaged and the doors of the house became warped and failed to close properly.
A normal reading of this paragraph would lead the reader to conclude that the only defects noted on October 2, 1998, were air conditioning defects. Air conditioning defects manifesting themselves so soon after construction are not typically associated with faulty pile driving. Implicit in Dmitri's argument is that its pile driving operations had nothing to do with the problems manifesting themselves in the air conditioning system only a few weeks after the Rando's purchased the property. Indeed, that is what one would normally assume in the absence of proof to the contrary, and the burden of producing such proof is on Century as the mover for summary judgment denying coverage. On the other hand, the problems the Randos alleged they first noticed on or after February 24, 1999, are problems one would more readily associate with defective pile driving. Century offers no proof that the alleged problems with the air conditioning system were the result of Dmitri's work. Dmitri has offered no proof that the air conditioning system problems were unrelated to its work. Moreover, proof of the causation of the air conditioning system defects is really wrapped up with the original plaintiffs' proof of their claim at the trial on the merits. Therefore, we find that there is a genuine issue of material fact as to whether the air conditioning system problems are causally connected to Dmitri's work. Accordingly, at this stage of the proceedings we must also find that there is a genuine issue of material fact as to whether the earliest alleged manifestation of defects and damage caused by the work done by Dmitri was February 24, 1999, which is within the policy period covered by Century.
Having determined that the allegations of the original petition raise claims for damages arguably within the policy period, we must next consider whether those damages are covered by the policy issued by Century.
The trial judge in his reasons for judgment states that:

In Coverage Section (A)(1)(b)(1) and (A)(1)(b)(2), the Policy states that the insurance applies to property damage only if the property damage is caused by an occurrence that takes place in the coverage territory which occurs during the policy period. The Policy defines exactly when a[sic] occurrence us deemed to take place in Coverage Section (A)(1)(c). The section specifically states that the property damage is *827 deemed to take place at the time of the first such damage or injury[3] even though the nature and extent of such damage or injury may change; and even though the damage may be continuous or repeated exposure to substantially the same general harm. The original Plaintiffs in the Petition alleged that the first damage to their property appeared on October 2, 1998. Therefore, the alleged property damage is deemed to have occurred on October 2, 1998. [Emphasis added.]
But, as we have already noted, the air-conditioning damage alleged to have become manifest on October 2, 1998, is not damage we can necessarily attribute to Dmitri in the absence of more specific allegations and/or proof, and the doctrine of res ipsa loquitur unquestionably does not apply. Therefore, as we agree with the trial judge that damage under the policy is deemed to take place at the time of the first such damage, the damage allegedly first noticed by the Randos that one could typically associate with defective pile driving by Dmitri would have occurred on February 24, 1999, within the coverage period of the policy. In other words, applying this definition of when damage occurs to the allegations made by the original plaintiffs, one would have to conclude that there was an occurrence on February 24, 1999, within the policy period.
Century's own brief supports this conclusion:
In Jackson v. Welco Mfg. Of Texas[4], 612 So.2d 743, 744 (La.App. 4th Cir.1992), the Court held that an occurrence is generally understood to mean the time and/or event when the negligence manifests itself by causing actual damages, rather than the commission of the causative act.
This reasoning supports the conclusion that an alleged occurrence took place on February 24, 1999, within the policy period. But Century next argues that there was no occurrence because there was no discrete event that a reasonable person would call an accident, citing Trinity Industries, Inc. v. Insurance Company of North America, 916 F.2d 267, 269 (5 Cir.1990). Century contends that:
The allegations, such as Paragraph V of Plaintiff's original petition, indicate numerous problems occurring, but no concrete or discrete date or event is alleged and none exists. No discrete accident resulting in physical injury, or such event, is pled.
Section IV (13)Commercial General Liability Conditions of Century Surety's policy, defines Occurrence as follows:
"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. [Emphasis added.]
In other words, Century seizes on the word accident in the definition of Occurrence found in the policy in support of its contention that Occurrence should be limited to a concrete or discrete date or event. Thus, Century relies on a traditional, but narrow reading of the term accident such as an explosion, a fall, a collapse or a collision, rather than something evolving gradually or manifesting itself over time. On the other hand, Dmitri emphasizes the portion of the definition of Occurrence referring to continuous or repeated exposure to substantially the same general harmful conditions in support of its contention that the allegations against Dmitri concerning problems developing over time as a result of Dmitri's allegedly negligent pile driving *828 operations fall under the category of Occurrence. In other words, Dmitri contends that the term accident is modified by the subsequent reference to continuous or repeated exposure leading to a much broader concept of Occurrence; or at the very least the modifying phrase creates ambiguity which must be construed in favor of coverage.
The resolution of these two conflicting viewpoints is not immediately obvious as there are cases on both sides of the issue in the jurisprudence, all worthy of consideration.
In Serigne v. Wildey, 612 So.2d 155 (La.App. 5 Cir.1992), the court considered a policy definition of Occurrence identical to that before this Court in the instant case. Pelican State Mutual Insurance Company argued in Serigne that faulty construction and defective workmanship were not accidental and therefore not an occurrence within the confines of the policy. Id., at p. 156. The faulty construction and defective workmanship in Serigne resulted in the sudden collapse of a marina. The court found that the marina's fall into the bayou was clearly an accident and consequently an insured-against occurrence. Id., at p. 157. A few paragraphs later, the court made a statement quite relevant to the instant case:
[T]he occurrences which caused the Serignes' marina to fail occurred over an extended period of time.
Id.
Thus Serigne stands for the dual proposition that faulty construction and defective workmanship can constitute an accident or occurrence in spite of the fact that the problems may evolve over a period of time rather than occurring in one discrete instant.
In Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5 Cir. 3/15/95), 653 So.2d 1215, 1224 the insurance policies defined occurrence as follows:
[O]ccurrence means an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured... [Emphasis added.]
Id. The plaintiffs' claims in Korossy were based on excessive differential settlement of the foundations of their homes, which plaintiffs attributed to faulty construction and defective materials. The Korossy court went on to note in pertinent part that:
In a recent opinion we found a similar definition of occurrence in a CGL policy was ambiguous. Western World v. Paradise Pools & Spas, 93-723 (La.App. 5th Cir.2/23/94)[,] 633 So.2d 790, involved claims for damage to a swimming pool by cracks which developed in the pool walls and the patio decking surrounding it. We concluded occurrence was ambiguous because it was defined as an accident, including continuous or repeated exposure to conditions and thus could be construed to include development of cracks in the swimming pool, so that the policy in that case covered the damages.
* * *
The evidence in this case establishes that the damage in these cases was caused by continuous or repeated exposure to conditions, specifically the factors which Dr. Gilbert testified produced the excessive differential settlement. The policy definition makes continuous or repeated exposure to conditions an accident for purposes of an occurrence. [Emphasis added.]
We acknowledge the line of cases which hold that improper or faulty construction does not constitute the accident or *829 fortuitous event that is required in order for there to be an occurrence under the policy definition. See, e.g., Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir.1992); Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3rd Cir.1986); Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1st Cir.1982); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980). As we noted in Serigne v. Wildey, supra, however, those cases are distinguishable because of specific policy language in each case.[[5]] See 612 So.2d at 157.
Id., pp. 13-14, 653 So.2d at 1215.
Thus, Korossy supports Dmitri's argument concerning the issue of occurrence and accident; but the Korossy court went on to deny coverage, holding that the exclusion for work performed by the named insured is applicable. Id., p. 27, 653 So.2d at 1230. While the result in Korossy might seem to support Century Surety rather than Dmitri on the question of coverage, it is significant that there is no mention by the Korossy court of an exception to the exclusion for work performed such as exists in the Century policy in the instant case in the form of products-completed operations hazard coverage.
There are a number of cases including Alberti v. WELCO Mfg. Of Texas, 560 So.2d 964 (La.App. 4 Cir.1990) and Jackson v. Welco Mfg. Of Texas, 612 So.2d 743 (La.App. 4 Cir.1992), in which the definition of occurrence was the same in all material respects as that of the instant case and the court found coverage for defects of workmanship resulting in damages evolving over a period of time. However, in those cases this Court proceeded based on the assumption that an occurrence had occurred, which apparently was uncontested by the insurance company. The only point on this issue that was contested was whether the occurrence had occurred during the period of coverage. While these cases support Dmitri's position as far as they go, they are not conclusive because this Court did not consider specifically and directly the question of whether the definition of occurrence and accident includes defects in workmanship that only manifest themselves gradually over a period of time.
In Massey v. Parker, 98-1497 (La.App. 3 Cir. 3/3/99), 733 So.2d 74, the plaintiffs sued their contractor for construction defects in their new home. The policy definition of occurrence in Massey was the same in all material respects to that of the instant case. In finding that construction defects could be considered occurrences under the policy, the Massey court carefully explained why it rejected the line of cases holding to the contrary:
The issues presented herein were recently addressed by this court in Iberia Parish School Board v. Sandifer & Son Construction Co., Inc., 98-319 (La.App. 3 Cir. 10/28/98), 721 So.2d 1021. In Sandifer, we rejected the line of jurisprudence in which courts refused to find an occurrence where the only basis of a *830 contractor's liability was improper construction. In doing so, we utilized the approach suggested by Professors William S. McKenzie and H. Alston Johnson, III, in their treatise on Louisiana insurance law. In the professor's view:
Whether there has been an occurrence, however, depends upon whether there has been an accident, not upon the legal cause or consequence of that accident. Defective workmanship or the incorporation of defective materials is an `accident'....[[6]] With construction defects, the real issue usually is not whether there has been an "occurrence," but whether there has been property damage during the policy period, and, if so, whether the "work" exclusion is applicable. If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an "occurrence" basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor. Whether coverage for such an "occurrence" is excluded by the work, product or other exclusion is a separate, very important inquiry.... On the otherhand, the mere existence of a construction defect does not trigger coverage under an "occurrence" basis policy; coverage is triggered only if the defect causes property damage during the policy term.

Id. at pp. 6-7, 721 So.2d at 1023-24 (quoting MCKENZIE AND JOHNSON, 15 LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE § 183, at p. 370 (2d ed.1996) (emphasis added)).
In deciding the issue of whether there was an occurrence that triggered coverage under the State Farm policy, the trial court followed the line of jurisprudence rejected in Sandifer and held that the Masseys failed to prove an "occurrence." We reverse and find there was an "occurrence."
Id., pp. 2-3, 733 So.2d at 75-76.
In Iberia Parish School Board v. Sandifer & Son Construction Co., Inc.[7], 98-319 (La.App. 3 Cir. 10/28/98), 721 So.2d 1021, which provided the basis for the decision in Massey, supra, the court also explained its rejection of the contrary line of cases:
Commercial Union claims that there has been no "occurrence" and no allegation of property damage in this case. It claims that the only claimed damage is the defective roof itself. Commercial Union relies on Carpenter v. Lafayette Woodworks, Inc., 573 So.2d 249 (La.App. 3 Cir.1990); Fredeman Shipyard, 497 So.2d 370; and Swarts, 610 So.2d 888. All three cases found that defective workmanship was not an "occurrence" that would trigger policy coverage. All three cases applied the well-settled principle of insurance law that liability policies are not intended to serve as performance bonds.[8] After finding that *831 defective workmanship was not an occurrence-more or less as a matter of law-the three courts then applied the work-product exclusion clause in the policies to exclude coverage to the insured for or replacement of his own defective work or defective product. We are left uncertain as to what the real basis for the finding of non-coverage was. We prefer to utilize the approach suggested by Professors McKenzie and Johnson quoted above.
Under the terms of the present Commercial Union policy, an "occurrence" is an "accident including continuous or repeated exposure to substantially the same general harmful conditions." The roof leaked. That was an accident or "occurrence." The roof leaked allegedly because improper construction caused damage to it and made it leak. As a result, the roof had to be replaced. As with the gas escaping in the Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958) case, there are allegations in our present case that defective workmanship and defective materials caused continuous exposure to rain at the school, which caused the roof to leak. This allegedly resulted in property damage because the roof had to be replaced. This allegedly improper construction causing damage to the roof triggered an "occurrence" under the terms of the present policy.
Sandifer, pp. 7-8, 721 So.2d at 1024.
Dmitri contends in its brief that:
The court [in Sandifer] also rejected attempts by the insurer to deny coverage based upon the work-product exclusion, finding there to be coverage under the product-completed operations provision.
Actually, the Sandifer court found that the work product exclusion did apply,[9] but also found an exception to the exclusion where the work was performed on behalf of the contractor by a subcontractor. Dmitri does not contend that this exception to the work product exclusion is applicable in the instant case.
In Gaylord Chemical Corp. v. ProPump, Inc., 98-2367 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, the first circuit adopted the same reasoning as was used in Massey and Sandifer, supra, based on McKenzie and Johnson, but noted the following important additional concept:
Accident is defined from the viewpoint of the victim; losses that were unforeseen and unexpected by the victim are the result of an accident. Id. at 373; see also Nelson v. Want Ads of Shreveport, Inc., 31,168 (La.App. 2nd Cir.10/30/98), 720 So.2d 1280, 1282-83; Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, 1223-24, writs denied, 95-1522 and 95-1536 (La.9/29/95), 660 So.2d 878.
While all of the foregoing cases favor Dmitri's position, we acknowledge as we stated earlier the existence of a contrary line of cases finding that construction defects are not accidents or occurrences. Vitenas v. Centanni, 381 So.2d 531 (La.App. 4 Cir.1980), is a frequently cited mainstay of such cases. In Vitenas this Court took the position that:

*832 The policy, under its comprehensive general liability coverage, provides that the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance applies, caused by an occurrence. Under the policy definition, occurrence means "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;". Under the facts of this case, there was no occurrence as defined in the policy. The liability of the contractor is dependent solely upon his improper construction of the carport by slanting the concrete slab the wrong direction and by resting the roof facia board on the support column.
Id., 381 So.2d at 534-535.
In Fredeman Shipyard v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3 Cir.1986), another oft cited case, the court chose to follow those cases finding no accident or occurrence where the liability of a contractor was dependent solely on his improper construction ... Id. at 374. In making this statement, the Fredeman Shipyard court cited this Court's opinion in Vitenas, supra. However, this Court in its much more recent opinion in Orleans Parish School Board v. Scheyd, 95-2653 (La.App. 4 Cir. 4/24/96), 673 So.2d 274, chose to explain away Fredeman Shipyard on this issue and, therefore, implicitly explained away Vitenas as well:
Thus, we find that the rationale of Fredeman is based, not on the notion that improper or defective workmanship can never be an occurrence, but on the fact that it was excluded by the work product exclusion. [Footnote 6 omitted.] The existence of a work product exclusion is the real thrust of the [insurer's] argument.
Scheyd, pp. 7-8, 673 So.2d at 278.
The earlier case of Vobill Homes, Inc. v. Hartford Accident and Indemnity Company, 179 So.2d 496 (La.App. 3 Cir.1965), gave an even stronger expression to view expressed in Vitenas:
For this reason, it has uniformly been held that a liability policy with an exclusion clause such as the present does not insure any obligation of the policyholder to repair or replace his own defective work or defective product.
Id., 179 So.2d at 497.
In Bacon v. Diamond Motors, 424 So.2d 1155 (La.App. 1 Cir.1982), another leading case supporting the notion that occurrence and accident do not include construction defects, the First Circuit relied on this circuit's decision in Vitenas, supra. However, in the later First Circuit case of Gaylord Chemical Corp. v. ProPump, Inc., 98-2367 (La.App. 1 Cir. 2/18/00), 753 So.2d 349, the First Circuit relied on professors McKenzie and Johnson and the case of Korossy, supra, in deciding that an accident and an occurrence had taken place when a pump sold by Commercial Union Insurance Company's insured, Pro-Pump, failed to perform properly. Therefore, in spite of the fact that Gaylord does not explicitly state that a construction defect is an accident or an occurrence, Korossy and McKenzie and Johnson upon which Gaylord relied, do. It follows that were the Bacon case to come before the First Circuit today, subsequent to Gaylord, the result would most likely be different. In other words, we place the First Circuit in the category of those Louisiana appellate circuits that subscribe to the idea that construction defects can constitute accidents and occurrences.
In Carpenter v. Lafayette Woodworks, Inc., 573 So.2d 249 (La.App. 3 Cir.1990), *833 the Third Circuit relied on Vitenas, Fredeman Shipyard, and Bacon, supra, to find no accident or occurrence where the liability of a contractor was dependent solely on his improper construction or faulty repair work. But we find that the Third Circuit has implicitly overruled Carpenter by virtue of its contrary later decisions in Sandifer and Massey, supra.
In Lewis v. Easley, 614 So.2d 780 (La.App. 2 Cir.1993), the Second Circuit cites Fredeman, supra, in stating that no occurrence or accident transpires where the liability of a contractor depends solely on improper construction or faulty repair work. However, in the later case of Oxner v. Montgomery, 34,727 (La.App. 2 Cir. 8/1/01), 794 So.2d 86, the Second Circuit repudiated the statement it made in Easley concerning the meaning of occurrence and accident, labeling them mere dicta based on an analysis by professors McKenzie and Johnson and the Second Circuit's decision in Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Insurance Company, 32,743 (La.App. 2 Cir. 3/1/00), 753 So.2d 980. In Joe Banks Drywall, a stain on vinyl flooring that seeped up from below was found to be to be an occurrence.
Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1 Cir.1992), involved structural defects analogous to those found in the instant case, but the alleged negligence in Swarts was the building of the residence on unstable subsoil. Based on Fredeman, Bacon, and Vitenas, the First Circuit in Swarts found no accident or occurrence based:
The policy defines an occurrence as an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage either expected or intended from the standpoint of the insured. Where the liability of a contractor is based solely on improper construction, courts have refused to find occurrence in insurance policies containing identical or substantially similar definitions of occurrence. See Fredeman Shipyard Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370, 374 (La.App. 3d Cir.1986). In Bacon v. Diamond Motors, Inc., 429 So.2d 131 (La.1983), this court held that faulty repair work did not fall within a liability policy's definition of an accident, where the definition of that term was virtually identical to the term occurrence in the present policy. See also Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980) (holding that a policy which defined occurrence similarly to the definition in the present policy did not provide coverage for a claim against a contractor for alleged faulty workmanship in constructing a building). Plaintiffs are asserting a claim based on faulty construction against Security's insured; thus, under the jurisprudence, there has been no occurrence to trigger coverage under the policy. [Emphasis added.]
Id., at p. 890.
However, as noted previously in this opinion, the First Circuit in the much more recent Gaylord case, supra, reached a result diametrically opposed to the result it reached several years earlier in Swarts and Bacon, leading this Court to conclude that the First Circuit has tacitly rejected the reasoning of its earlier holdings in Swarts and Bacon, supra.
Based on the foregoing survey of cases we find that the clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when they manifest themselves. However, a clear signal from the Supreme Court on this issue would surely do much to eliminate expensive future litigation.
*834 Having concluded that the alleged damages arising from structural defects alleged by the Randos to have manifested themselves subsequent to the air conditioning problems and within the coverage period of Century's policy, constitute occurrences covered the Century policy, we must next turn to the question of whether there are any exclusions in the policy upon which Century could legitimately base its decision to deny coverage.

II. THE POLICY PROVIDES "PRODUCTS-COMPLETED OPERATIONS" COVERAGE
Paragraph "j. Damage to Property" under the exclusions section of the policy excludes property damage coverage for among other things:
That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.
Obviously this exclusion applies because the claim against Dmitri is basically one for the incorrect performance of its pile driving work. However, the policy goes on to make several exceptions to this exclusion, including the following:
Paragraph (6) of this exclusion does not apply to property damage included in the "products-completed operations hazard."
In other words, the exception to the exclusion provides coverage for incorrectly performed work where the property damage is "included in the `products-completed operations hazard'". The policy defines "Products-completed operations hazard" in § 16 of the definitions section of the policy, in pertinent part as follows:
16. "Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned.
In this case it is uncontested that the alleged damages occurred away from Dmitri's premises; the products are not still in Dmitri's physical possession; and Dmitri's work has been completed. Therefore, the Randos allegations fall within the "product-completed operations hazard" coverage of the policy.
The Century Surety policy Commercial General Liability Coverage Part Declarations shows $300,000 for the "Products-Completed Operations Aggregate Limit," i.e., a reasonable reading of the policy includes "products-completed operations coverage."
Consistent with this "products-completed operations" coverage is an endorsement form entitled Special Conditions Independent Contractors referring to independent contractors who have provided to Dmitri, prior to entering any job site on behalf of Dmitri, certificates of insurance for $300,000 for Products/Completed Operations. Thus, it is impossible to conclude that the policy unambiguously intends to exclude products/completed operations coverage. We note that Century has offered no explanation for what is shown on the declarations page to contradict this conclusion.
An exception to the incorrectly-performed-work exclusion based on "products-completed operations hazard" coverage that is identical to that found in the Century policy in the instant case is to be found in Vintage Contracting, L.L.C. v. Dixie Building Material Company, Inc., 03-422, p. 8 (La.App. 5 Cir. 9/16/03), 858 So.2d 22, *835 27. Vintage involved a concrete slab that had to be replaced because it did not meet contract specifications. The court noted that coverage for products-completed operations hazard was shown on the declarations page of the insurance policy, just as it is to be found on the declarations page of the Century policy in the instant case.
The Vintage court stated that coverage would apply under the "products-completed operations hazard" were it not for the fact that the work had not been completed at the time the claim arose[10]:
Although appellants contend that this provision in the policy is ambiguous, we find the terms of the policy to be clear and unequivocal. In order for this coverage to apply, the work must have been completed or abandoned, neither of which occurred in this case.
Relying on professors McKenzie and Johnson, Insurance Law and Practice, 15 La. Civil Law Treatise, § 186 (2nd Ed.1996), the Vintage court explained products-completed operations hazard coverage:
The completed operations hazard refers to the insured's exposure to liability arising out of completed work performed away from his premises. The products liability and completed operations hazard are usually covered under the standard provisions of a general liability policy, but an insured may choose to exclude such coverage.[11]
However, while Vintage implies that products-completed operations coverage under language such as is found in Century's policy would provide an exception to an exclusion for incorrectly performed work, we cannot say that Vintage actually held that. However, we are persuaded that where completed operations coverage is provided, it would afford coverage of the type Dmitri is seeking in the instant case.
The policy in Kidd v. Logan M. Killen, Inc., 93-1322 (La.App. 1 Cir. 5/20/94), 640 So.2d 616, includes language identical to that found in the Century policy in all respects relevant to the work product exclusion and the exception to that exclusion for products-completed operations coverage. The Kidd court distinguished a number of cases upon which Century relies on the basis that they did not contain products-completed operations coverage:
We note the numerous cases which hold that a liability policy with a work product exclusionary clause does not provide coverage to the insured for repair or replacement of the contractor's own defective work or defective product. See, Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir.1992); Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1st Cir.1982), writ denied, 429 So.2d 131 (La.1983); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980). However, none of the policies in these cases contained coverage for "products-completed operations," which Safeco admitted is afforded to Killen. See also Fredeman Shipyard, Inc. v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3rd Cir.1986). [Emphasis added.]
Id., pp. 10-11, 640 So.2d at 622.
The declarations in the policy in Kidd showed $500,000.00 products-completed operations coverage, just as the declarations page in the Century policy in the instant case shows $300,000.00 of such coverage. In Kidd it appears that the proper *836 forms describing the products-completed operations coverage were not attached to the policy, but because of the declarations page showing $500,000.00 of such coverage, the Kidd court held that summary judgment in favor of the insurance company based on the work product exclusion was not proper. In effect, the Kidd court held that the conflict between what was shown on the declarations page and the work product exclusion created a genuine issue of material fact unsuitable for disposition by summary judgment. In the instant case there is no suggestion that any of the forms related to the products-operations completed hazard coverage are missing, which would logically mean that Dmitri's argument that it had such coverage is even stronger than the argument made by the insured in Kidd.
James Pest Control v. Scottsdale Ins. Co., 99-1316 (La.App. 5 Cir. 6/27/00), 765 So.2d 485, cited by Dmitri in support of its assertion that the damage in the instant case occurred during the period of policy coverage, is otherwise inapposite to the instant case because it involved termite damage and not construction damage and there was no issue of a work product exclusion.
Century cited Orleans Parish School Board v. Scheyd, Inc., 95-2653 (La.App. 4 Cir. 4/24/96), 673 So.2d 274, in support of its attempt to have this Court apply the manifestation theory to the occurrence, but the issue as we have shown is not so much whether there was an occurrence or whether an occurrence occurred during the period of coverage, which issues we have conceded to Dmitri, but whether the work product exclusion applies. In Scheyd the work product exclusion was replaced with a Broad Form Comprehensive endorsement that this Court found created sufficient ambiguity to require the insurer to provide a defense, although this court specifically reserved to the insurer the right at a trial on the merits to prove that there was no coverage. Such a Broad Form Comprehensive endorsement is not to be found in the instant case.
All of the relevant policy provisions in Mike Hooks, Inc. v. JACO Services, Inc., 95-1485 (La.App. 3 Cir. 5/8/96), 674 So.2d 1125, are identical to those found in the Century policy in the instant case, with one very significant difference: There is no mention in Mike Hooks of an exception to the work product exclusion such as we quoted above in the Century policy. In Mike Hooks the court conducted the following analysis:
It is well settled that liability policies containing a work product exclusion similar to the one at issue does [sic] not provide coverage for the defective work or defective product of the insured. Parker v. Dubus Engine Co., 563 So.2d 355 (La.App. 3 Cir.1990); Kold, Inc. v. United States Fidelity & Guar. Co., 496 So.2d 1338 (La.App. 3 Cir.), writ denied, 498 So.2d 758 (La.1986). As an exception to this rule, JACO and Hooks cite Kidd v. Logan M. Killen, Inc., 93-1322 (La.App. 1 Cir. 5/20/94), 640 So.2d 616. In Kidd, the policy provided coverage for products-completed operations in the amount of $500,000.00. The policy also contained an exclusion for "`property damage' to `your product' arising out of it or any part of it," and "`property damage' to `your work' arising out of it." The court in Kidd stated:
After reviewing the record and the evidence submitted, we cannot say that there are no genuine issues of material fact as to coverage, nor can we say that reasonable minds must inevitably conclude that Safeco is entitled to judgment as a matter of law. The policy declarations clearly reveal that there is coverage for "products-completed *837 operations hazard" up to the policy limits of $500,000.00. Moreover, in its appellate brief, Safeco unequivocally acknowledges that there is coverage for "products-completed operations."
While the language in the policy contains numerous provisions regarding the coverage, exclusions, and exceptions to the exclusions and may suggest that the damages sustained by the Kidds fall under the "products-completed operations" coverage of the policy, there are no provisions in the policy regarding this coverage, other than that contained in the definitions section of the policy.

Id. at 621.
We agree with our brethren in Kidd. The policy at issue here, similar to that found in Kidd, clearly provides $1,000.000.00 in coverage for products-completed operations and then attempts to exclude coverage for this in exclusion 2(1). Aside from the entry in the definition section of the policy for products-completed operations hazard, the only reference made to products-completed operations coverage is in exclusion 2(l). We are unable to find an unambiguous provision in this policy addressing what the products-completed operations coverage, as found on the declarations page, encompasses. As such, we find that the portions of the policy covering products-completed operations to be ambiguous. Therefore, we are constrained to interpret these terms in a light favoring coverage. [Emphasis added.]
Mike Hooks, supra, pp. 5-6, 674 So.2d at 1127-1128.
As the Mike Hooks court found sufficient ambiguity in the policy to defeat summary judgment based on the declarations of coverage for products-completed operations coverage alone with no mention of an exception to the work product exclusion, per force, in the instant case where there is not only a declaration of $300,000.00 of such coverage in the Century policy analogous to that found in Mike Hooks, but also a specific exception to the exclusion of coverage, the Mike Hooks reasoning would dictate that we reverse the judgment in favor of Century.
We are persuaded that the specification of a $300,000.00 coverage amount on the declarations page for products-work completed coverage similar to the specific coverage amount found in Kidd and Mike Hooks along with the exception for such coverage to the incorrectly performed work exclusion is sufficient to allow us to determine that Century is obligated to provide Dmitri with both coverage, assuming that the occurrence occurred during the coverage period, and a defense until such time as it can be shown that the occurrence did not occur during the period of coverage.

III. CONCLUSIONS AND DECREE
Pursuant to the foregoing analysis we make the following findings:
1. The allegations of the plaintiffs' petition state a claim for an occurrence or accident under the Century policy.
2. The policy provides an exception to the work-product exclusion in the form of products-completed operations coverage.
3. There is a genuine issue of material fact concerning whether the problems with the plaintiffs' air conditioning system are causally related to Dmitri's work, i.e., there is a genuine issue of material fact as to whether the claims alleged by the plaintiffs manifested themselves prior *838 to the period of coverage provided by Century.
4. Therefore, the allegations of the petition do not clearly and unambiguously exclude coverage.
5. As we find that the Century policy does not clearly and unambiguously exclude coverage for Dmitri, Century is obligated to provide Dmitri with a defense.
Accordingly, we reverse the judgment of the trial court and render a partial summary judgment in favor of Dmitri and against Century condemning Century to provide a defense to Dmitri. Dmitri prayed for the cost of defense to date, but did not brief that issue. Therefore, we deem that issue to be abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4. All costs of this appeal are to be borne by Century. We remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND RENDERED IN PART AND REMANDED
LOVE, J., concurs.
GORBATY, J., dissents with reasons.
CANNIZZARO, J., concurs with reasons.
LOVE, J., concurs.
I concur for the reasons assigned by Judge Cannizzaro.
GORBATY, J. dissents with reasons.
I respectfully dissent. Century issued a Contractors Commercial General Liability occurrence policy to Dmitri, providing bodily injury and property damage coverage which occurs during the policy period. The policy was in effect from December 11, 1998 through December 11, 2001. However, according to the plaintiffs' Petition for Damages, the first complaint of damage to the home was October 2, 1998, before the policy was in effect.
The policy provides in part:
All bodily injury or property damage arising from, caused by, or contributed to by or in consequence of an occurrence shall be deemed to take place at the time of the first such damage or injury, even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the occurrence causing such bodily injury or property damage may be continuous or repeated exposure to substantially the same general harm.
I feel that the trial court was correct in ruling that the occurrence clause was triggered when the first such damage took place, on October 2, 1998, the date on which the leaking first appeared. To find that the earliest alleged manifestation of defects was on February 24, 1999, as suggested by the majority, would impermissibly expand the occurrence clause of the policy. I further note that I do not share the majority's concern that the trial court misapplied the policy in question, and in fact find the trial court's judgment to be a thorough, well-reasoned analysis of the facts and pertinent law.
Since the damage was evident and discoverable before the policy of insurance came into effect, no coverage existed. Accordingly, for the foregoing reasons, I would affirm the judgment of the trial court.
CANNIZZARO, J., concurs with reasons.
While I agree with the result reached by the majority opinion, I write separately to note that there are only two dispositive issues before us in this appeal, specifically: *839 1) whether the trial court erred in granting summary judgment in favor of Century on the basis that the first occurrence of the plaintiffs' property damage did not manifest itself within the effective policy period, and 2) whether Century has a duty to defend Dmitri in the suit against it. In my opinion, we need not address the issues of whether any policy exclusions are applicable and/or whether the policy provisions are ambiguous.
The trial court granted summary judgment, finding that the plaintiffs' allegation in paragraph V of their original petition that on October 2, 1998, the house began having serious problems with the air conditioning/heating unit leaking and failing to work properly constituted the first damage to the plaintiffs' property and because that damage did not occur within the policy period, liability coverage was not available for the claims against Dmitri as a result of its faulty work. The plaintiffs' allegation regarding the air conditioning/heating unit's problems, however, makes no reference to any foundation failure or foundation repairs that may be attributable to Dmitri's pile driving work. On the other hand, the plaintiffs' additional allegation in paragraph V of the petition that:
on February 24, 1999, sink holes began to visually appear on the property ... the plumbing was leaking ... the concrete, stucco and bricks were cracking and damaged and the doors of the house became warped and failed to close properly...
refers to property damage that occurred within the policy period and appears to be attributable to foundation failure. It cannot be ascertained from the petition alone whether the air-conditioning/heating unit problems that occurred in October 1998 were attributable to the faulty foundation and Century has offered nothing in support of its motion for summary judgment to prove that they were. Thus, there remains an unresolved issue of fact that precludes the granting of summary judgment on the basis that the first damage to the property did not occur within the policy period. The trial court erred in holding otherwise.
Regarding the duty to defend issue, it is well settled that an insurer's duty to defend is broader than its liability for an adverse judgment. Bryant v. Motwani, 96-1351 (La.App. 4 Cir. 10/30/96), 683 So.2d 880. The insurer's duty to defend is determined by comparing the allegations of the plaintiff's complaint with the terms of the policy; the insurer generally has a duty to defend unless the allegations in the complaint unambiguously exclude coverage. American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253, 259 (1969). Where the pleadings, taken as true, allege both coverage under the policy and liability of the insured, the insurer is obligated to defend, regardless of the outcome of the suit or the eventual determination of actual coverage. Id.; Bryant, 683 So.2d at 884. It is undisputed that the Century CGL policy provided Dmitri with liability coverage for the period December 11, 1998 through December 11, 2001. Because the plaintiffs' allegations of property damage are not clearly and unambiguously excluded from coverage under the policy, Century has a duty to defend its insured.
Accordingly, I concur in the reversal of the summary judgment rendered in favor of Century and in the rendering of a partial summary judgment in favor of Dmitri, condemning Century to defend it against the third party claims raised by Top Notch Properties.
NOTES
[1] Dmitri was originally designated in Top Notch's pleadings as an L.L.C., but this designation was later corrected in subsequent pleadings showing that Dmitri was a corporation.
[2] This is based on what is referred to as the Manifestation Rule of when an occurrence is said to take place for insurance purposes, i.e., an occurrence is said to have occurred when evidence of the occurrence first manifests itself. Century Surety urges this Court to adopt the Manifestation Rule, citing Korossy v. Sunrise Homes, Inc., 94-473 (La.App. 5 Cir. 3/15/95), 653 So.2d 1215 and Lafayette Ins. Co. v. C.E. Albert Constr. Co., 95-0048 (La.App. 4 Cir. 9/15/95), 661 So.2d 1093. We agree with Century that the Manifestation Rule should be applied in the instant case, but disagree with Century as to when the occurrence may have first manifested itself.
[3] Italics original.
[4] Emphasis original.
[5] This statement is not accurate. Neither is the statement referred to in Serigne v. Wildey, supra, where the court stated that:

In none of these cases, however, does the insurance cover an occurrence which is described in the policy as an accident.
The Serigne court then went on to use an example the case of Fredeman Shipyard v. Weldon Miller Contr., 497 So.2d 370 (La.App. 3 Cir.1986). However, we note that the Fredeman opinion specifies that occurrence is defined in the context of accident:
Under the Definitions section of the policy, occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.
Id., 497 So.2d at 374.
[6] Emphasis original.
[7] In Sandifer the plaintiff was complaining of a leaky roof.
[8] McKenzie & Johnson, Insurance Law and Practice, § 198, 15 La. Civil Law Treatise (2d Ed.1996), Work and Product Exclusions states that:

These exclusions are known as damage or injury to products and work performed exclusions. They are sometimes referred to collectively as the "work-product" exclusion in earlier policy forms. These exclusions reflect the intent of the insurance industry to avoid the possibility that coverage under the CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. The CGL policy is not intended as a guarantee of the quality of the insured's products or work.
[9] Regarding the work product exclusion, the Sandifer court stated:

In analyzing a comprehensive general liability policy which provided products-completed operations coverage, this court rejected the contention that the coverage for the products hazard was not subject to the work-product exclusions, finding the policy excluded coverage for damage to the seller's product. Aetna Ins. Co. v. Grady White Boats, Inc., 432 So.2d 1082 (La.App. 3 Cir.1983). [Emphasis added.]
[10] In the instant case it is uncontested that Dmitri's work was completed well before any alleged damages manifested themselves.
[11] This same quote can be found in Oxner v. Montgomery, 34,727, p. 13 (La.App. 2 Cir. 8/1/01), 794 So.2d 86, 94.