# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2011

No. 10-30892

Lyle W. Cayce
Clerk

FEDERAL INSURANCE COMPANY

Plaintiff - Appellant

v.

NEW HAMPSHIRE INSURANCE COMPANY; AIG DOMESTIC CLAIMS, INCORPORATED, formerly known as AIG Technical Services, Incorporated

Defendants - Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:03-CV-385

---

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Wayne Robins was injured during an explosion at a chemical plant and filed suit in state court against multiple defendants, including Thomas & Betts Corporation (T&B). After his case was consolidated with other related cases, Robins agreed to cooperate with a plaintiff-company, AXA Global Risks (AXA), for the duration of the trial, in exchange for $900,000. In a subsequent effort to settle his bodily injury claim against T&B, Robins entered into a preliminary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30892

agreement with T&B that would entitle Robins to payment of $5 million plus indemnification by T&B, "not to exceed 1.2 million dollars," for any eventual liability that Robins might have to AXA for breach of contract. T&B's primary insurance company, New Hampshire Insurance Company, agreed to pay $5 million of the settlement, but not the breach of contract damages. T&B's secondary excess insurance company, Federal Insurance Company (Federal), paid $990,000. A year later, Federal filed a subrogation suit against New Hampshire and AIG Domestic Claims, Inc. (collectively New Hampshire), which served as the claims administrator on behalf of New Hampshire. New Hampshire filed a motion for summary judgment, which the district court granted. We REVERSE and REMAND.

## I.

On July 5, 1999, an explosion occurred at the Kaiser Aluminum Corporation's (Kaiser) aluminum processing plant in Gramercy, Louisiana. Several persons, including Robins, were injured. Subsequently, Robins filed suit in Louisiana state court against multiple defendants, including T&B. Robins alleged that T&B manufactured a product that contributed to the explosion. It is undisputed that New Hampshire was T&B's first-layer insurer for the relevant time period that T&B's policy with New Hampshire (hereinafter the New Hampshire policy or the Policy) provided coverage from January 1, 1999 to January 1, 2000. The Policy required New Hampshire to pay those sums that T&B "becomes legally obligated to pay by reason of liability imposed by law or assumed by [T&B] under an Insured Contract because of Bodily Injury." It is also undisputed that Federal was T&B's second-layer excess insurer for the same period.

In late 2000, Robins's lawsuit was consolidated with other lawsuits filed as a result of the explosion. Among the consolidated lawsuits was a suit by AXA and other property insurers which paid significant business-interruption and

No. 10-30892

property-damage losses to Kaiser as a result of the explosion. Later, AXA contracted to lend Robins $900,000 in exchange for Robins's cooperation as a joint plaintiff in the consolidated suit against T&B. The agreement also provided that, if Robins settled with another party without AXA's consent, he would be required to pay back the loan plus a $300,000 penalty.

On October 7, 2001, the day before the consolidated trial was set to begin, Robins entered into a preliminary settlement agreement with T&B (hereinafter Preliminary Agreement). Relevant here, Paragraph 1 of the Preliminary Agreement states:

> Thomas & Betts corporation and Its Insurers agree to pay Wayne Robins, et al Five Million Dollars ($5,000,000.00) as a result of that lawsuit entitled *In Re: Gramercy Plant Explosion at Kaiser,* and Master Docket Number 25,975, 23rd Judicial District Court, St. James Parish, Louisiana and Wayne Robins, Carolyn Robins, Shamita Robins, Damita Robins, Docket Number 26,671, 23rd Judicial District Court, Louisiana.

Paragraph 5 of the Preliminary Agreement states:

> Thomas & Betts and Its Insurers agree to hold harmless, indemnify and defend Wayne Robins, et al, The Fields Law Firm and Cleo Fields for any amount owed to AXA, Kaisers Subrogated Property Reinsurers, Caleb Didriksen and the Didriksen Law Firm, not to exceed 1.2 million dollars.

On October 24, 2001, New Hampshire informed Robins that it "did not agree to provide the hold harmless and indemnification provisions cited in paragraph five of the agreement." Thus, the company refused to pay any sums related to Paragraph 5. The following day, Robins filed a motion to enforce the Preliminary Agreement. Soon after, AXA filed a similar motion.

On December 6, 2001, T&B sent a letter to Robins explaining its intention to deposit $5 million into the state court's registry, pending resolution of the

3

terms of the settlement, if the matter was not resolved by the next day. Robins sent a letter responding to T&B on the same day, stating that, if the funds were not paid to Robins by December 7, 2001, Robins would file suit against T&B. T&B deposited the $5 million into the state court's registry on December 6, 2001. On December 11, 2001, AXA sent Robins a demand for the $1.2 million, resulting from Robins's breach of contract. Robins faxed this document to Federal to advise the company of the status of AXA's demand. On December 10, 2001, Robins amended his motion to enforce settlement to include additional damages.

It is not clear from the record whether the settlement agreement between Robins and T&B was ever finalized—if and when the settlement was paid to Robins, how much Robins was paid, or which insurance company or companies paid those amounts. However, at some point, Federal paid $990,000 to Robins on T&B's behalf.

In April 2003, Federal filed suit against New Hampshire in Louisiana state court, seeking subrogation. The case was removed to federal court, pursuant to federal diversity jurisdiction. In its complaint, Federal claimed that New Hampshire should have paid the $990,000 to Robins because the amount was part of the settlement of Robins's bodily injury claim. Thus, it was within the limits of the New Hampshire policy. The case was administratively closed in August 2003, pending resolution of the underlying consolidated state law suit, but it was reopened five years later in November 2008.

After the case was reopened, the parties submitted a joint proposed scheduling order that included discovery, which the district court granted. However, before discovery could begin, New Hampshire filed a motion for summary judgment, arguing that the $990,000 was not a covered claim of bodily injury under the New Hampshire policy. Therefore, New Hampshire argued, it was not obligated to subrogate Federal. The district court summarily affirmed the magistrate judge's report and recommendation, granting New Hampshire's

No. 10-30892

motion and holding that Federal failed to prove that it paid any amount rightfully owed to T&B by New Hampshire.  Federal appealed.

## II.

## A.

"When sitting in diversity, this Court applies the substantive law of the state."  *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516 n.2 (5th Cir. 2010).  The parties do not dispute that this case is governed by Louisiana law.  This court reviews a district court's application of state law and grant of summary judgment *de novo*.  *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In reviewing summary judgment, "[w]e construe all facts and inferences in the light most favorable to the nonmoving party . . . ."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation and internal quotation marks omitted).

## B.

Although not mentioned in its filings to the district court or to this court, Federal's subrogation claim is a third-party performance and legal subrogation claim, arising under articles 1855 and 1829 of the Louisiana Civil Code.  Article 1855 provides:

> Performance may be rendered by a third person, even against the will of the obligee, unless the obligor or the obligee has an interest in performance only by the obligor.
>
> Performance rendered by a third person effects subrogation only when so provided by law or agreement.

Article 1829 provides in relevant part that "[s]ubrogation takes place by operation of law . . . in favor of an obligor who pays a debt he owes with others

or for others and who has recourse against those others as a result of the payment . . . ." LA. CIV. CODE art. 1829(3).  To this end, "[s]ubrogation is a legal fiction whereby payment by a third person . . . extinguishes an obligation of the original creditor.  The third person then steps into the shoes of the original creditor, acquiring the right to assert the actions and rights of the original creditor." *State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So. 2d 1230, 1233 (La. 1999) (citations omitted).  In other words, Federal cannot recover the $990,000 it paid on T&B's behalf unless that amount was covered by the New Hampshire policy.  Therefore, determining whether Federal is entitled to subrogation turns on: (1) the limits of the New Hampshire policy and (2) whether Federal's payment fits within the limits of the Policy.

### 1.

As previously mentioned, the New Hampshire policy requires New Hampshire to pay those sums that T&B "becomes legally obligated to pay by reason of liability imposed by law or assumed by [T&B] under an Insured Contract because of Bodily Injury."  The district court held that the phrase "legally obligated to pay" limits the New Hampshire policy to tort liability.  We agree.     "Legally obligated to pay" is not defined in the Policy.  Therefore, under Louisiana law, we must give the phrase its "generally prevailing meaning." LA. CIV. CODE art. 2047.  Because no Louisiana court has interpreted the meaning of "legally obligated to pay," we must make an *Erie*-guess about how the Louisiana courts would interpret the phrase. *See State Farm Fire and Cas. Co. v. Fullerton,* 118 F.3d 374, 378 (5th Cir. 1997).  To this end, it is well settled that the use of the phrase "legally obligated to pay" in an insurance policy limits coverage to damages arising out of tortious acts and does not cover contractual obligations. *See Data Specialties, Inc. v. Trans. Ins. Co.*, 125 F.3d 909, 911–12 (5th Cir. 1997) (examining Texas law and citing numerous federal and state court decisions that interpret "legally obligated to pay as damages" to

No. 10-30892

limit policy coverage to tort liability); *see also* 7A LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE §103:14 (3d ed. 2008) ("While the phrase 'legal liability' includes liability assumed by contract, the phrases 'liability imposed by law,' and 'legally obligated to pay as damages' do not."). Thus, the district court correctly held that the phrase "legally obligated to pay" in the New Hampshire policy limits the Policy's coverage to damages arising out of tort liability and does not cover contract damages. We next examine whether Federal's payment fits within the limits of the New Hampshire policy.

## 2.

An "insurer should have to reimburse the insured only to the extent that the settlement compromised claims that were covered by the policy." ALLAN D. WINDT, 2 INSURANCE CLAIMS AND DISPUTES § 6:31 (5th ed. 2009) (footnote omitted); *see generally Gulf Fleet Marine Operations, Inc. v. Wartsila Power, Inc.*, 797 F.2d 257 (5th Cir. 1986). Here, the only claim at issue is the bodily injury claim Robins brought against T&B. When T&B entered into the settlement agreement with Robins, the settlement was created solely to extinguish the bodily injury claim. Although a portion of the settlement agreement was characterized as amounts to indemnify Robins for his breach of contract with AXA, Robins did not have a breach of contract claim against T&B. Therefore, any sum of money paid to Robins by T&B was to compensate Robins for his bodily injury claim. In other words, the labeling of each component of the settlement does not change the reason for the agreement—settlement of the bodily injury claim. Consequently, the amount described in Paragraph 5 is not attributable to a breach of contract claim that is outside the limits of the New Hampshire policy. The payment was made in consideration for settlement of the bodily injury claim. Neither party disputes that the bodily injury claim is covered by the New Hampshire policy. Thus, the entire settlement amount was within the limits of the Policy.

No. 10-30892

## III.

We conclude that, because T&B's payment to Robins was wholly within the limits of the New Hampshire policy, Federal was not responsible for paying any amounts attributable to the settlement agreement and is entitled to subrogation. Accordingly, we REVERSE the district court's summary judgment and REMAND this case for further proceedings consistent with this opinion.