Interior Repair $1,025,403.03 Exterior Masonry Restoration $793,708.99 Rent Concessions $145,722.50 Loss of Income/Business Reputation (Past & Future) $2,790,394.00 Delay Damages $2,557,604.80 Total $7,312,833.32
Fireman's Fund's and Zurich's motions arise from these alleged damages. The interior repair and exterior masonry restoration damages are not at issue in this appeal. Fireman's Fund and Zurich contend that delay damages/liquidated damages, loss of income/business reputation, and rent concessions are economic damages, not "property damage," and are thus not afforded coverage under the applicable policies. Rice Mill argues on appeal that the economic damages it sustained occurred "because of" "property damage" such that coverage is triggered.
*1041 As this Court explained in Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C. , 2007-0251, pp. 5-7 (La. App. 4 Cir. 10/10/07), 969 So.2d 653, 658-59 :
A summary judgment may be rendered on the issue of insurance coverage alone, although a genuine issue as to liability or the amount
of damages exists. See La. C.C.P. art. 966 E; Leflore v. Coburn , 95-0690 (La. App. 4 Cir. 12/28/95), 665 So.2d 1323. A summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, exists under which coverage could be afforded. Reynolds v. Select Properties, Ltd. , 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183. An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage. McMath Const. Co., Inc. v. Dupuy , 03-1413, p. 4 (La. App. 1 Cir. 11/17/04), 897 So.2d 677, 681.
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. See La. C.C. art. 1983. Moreover, an insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. Supreme Services [andSpecialty Company, Inc. v. Sonny Greer, Inc. , 06-1827, p. 5 (La. 5/22/07), 958 So.2d 634, 638]; Reynolds , 634 So.2d at 1183 ; La. C.C. arts. 2045 - 2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. See La. C.C. art. 2046 ; Rando v. Top Notch Properties, L.L.C. , 03-1800 (La. App. 4 Cir. 6/2/04), 879 So.2d 821. Courts are not at liberty to alter the terms of insurance policies that are unambiguous. Edwards v. Daugherty , 03-2103 (La. 10/1/04), 883 So.2d 932. However, if any doubt or ambiguity exists as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. See La. C.C. art. 2056. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Borden, Inc. v. Howard Trucking Co., Inc. , 454 So.2d 1081, 1090 (La. 1983) ; Williamson v. Historic Hurstville Ass'n , 556 So.2d 103, 107 (La. App. 4 Cir. 1990).
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Yount v. Maisano , 627 So.2d 148, 151 (La. 1993). However, it is well-settled that, absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. Supreme Services , supra at p. 6, 958 So.2d at 638-639 ; Reynolds , 634 So.2d at 1183 ; Marcus v. Hanover Insurance Co., Inc. , 98-2040, p. 4 (La. 6/4/99), 740 So.2d 603, 606. In these circumstances, unambiguous provisions limiting liability must be given effect. Supreme Services , supra at p. 6, 958 So.2d at 639. Only if the language can reasonably be read to have more than one reasonable meaning can the language be said to be ambiguous. Rando , supra at p. 3, 879 So.2d at 825. Whether a contract provision is ambiguous is a question of law. Pope v. Khalaileh , 05-0027, p. 5 (La. App. 4 Cir. 6/1/05), 905 So.2d 1149, 1152. Moreover, [the insurer]
bears the burden of proving that a loss falls within a policy exclusion.
*1042 Blackburn v. National Union Fire Ins. Co. , 00-2668, p. 6 (La. 4/3/01), 784 So.2d 637, 641 ; Rando , supra at p. 3, 879 So.2d at 825.
To resolve the particular issue before us, we must consider the language of the applicable policies to determine whether Rice Mill has alleged "property damage" so as to trigger the initial grant of coverage for Gibbs' and Rush's alleged liability under the Zurich and Fireman's Fund policies. See id.
Rice Mill alleges that, as a result of incomplete and defective masonry and waterproofing work by Rush and Gibbs, Rice Mill suffered damage to the interior and exterior of the apartments from multiple instances of water intrusion. Rice Mill further argues that it incurred delay damages, the cost of rent concession payments to the apartments' renters, and loss of income and business reputation "because of property damage" to the apartments.
In general, a commercial general liability ("CGL") policy is a broad statement of coverage, and insurers limit their exposure to risk or liability for damages through a series of specific exclusions. Stewart , 2007-0251 at p. 8, 969 So.2d at 659. We first determine whether the losses claimed by Rice Mill are covered by the language of the policies' initial grant of coverage.
As stated, Fireman's Fund issued, for each of the two relevant time periods, a policy of excess insurance to Rush for liability above the limits of the first layer of primary insurance provided by Westchester to Rush.
Coverage A of the Fireman's Fund's policies' states that it "will pay on behalf of any Insured those sums in excess of Primary Insurance that any Insured becomes legally obligated to pay as damages ... provided that such damages ... (a) are covered by Primary Insurance; (b) arise from injury or damage that occurs, or from an offense that is committed, during our Policy Period; and (c) take place anywhere in the world." The "terms and conditions of Primary Insurance apply to Coverage A...."
Zurich, likewise, issued a policy of CGL insurance to Gibbs for each of the relevant time periods in litigation. Both the Zurich and Westchester[3] CGL policies provide, in pertinent part:
SECTION I-COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
...
SECTION V-DEFINITIONS
*1043 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
...
17. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it...
In Stewart , this Court found that, in addition to a subcontractor's economic loss claims for breach of contract and redhibition against a steel stud manufacturer and manufacturer's insurer, the subcontractor sufficiently alleged damage to property other than to the steel studs themselves, or incident to their removal and repair; thereby, such allegations constituted "property damage," which triggered the initial grant of coverage under the CGL policy issued to the steel stud manufacturer. 2007-0251 at p. 12, 969 So.2d at 661-62. Stewart noted that "claims solely for economic losses, are generally not covered by CGL policies because of policy exclusions restricting coverage for damages, such as the 'work product' exclusion, and not on any inherent limitation in the general grant of coverage for 'property damage' as required by the insuring agreement." Id. , 2007-0251 at p. 11, 969 So.2d at 661. This Court explained that if the policy "never confers coverage for this type of liability as an original definitional matter," there would be no need for a policy exclusion to specifically eliminate coverage. Id. , 2007-0251 at p. 10, 969 So.2d at 660. Having found that the subcontractor's claims for "property damage" triggered the initial grant of coverage under the policy, this Court found that coverage for certain property damage claims was nevertheless precluded by other policy exclusions.
On appeal, Rice Mill argues, as to the contested categories of damages as a whole, that the initial grant of coverage under the policies is triggered when there is "physical injury to tangible property" caused by an "occurrence" and that the economic damages it sustained occurred "because of ... property damage." Rice Mill contends that the district court improperly found as a matter of law that these categories of damages were purely economic damages and not property damage. We find, as this Court did in Stewart , that to the extent that summary judgment was granted on the basis that Rice Mill failed to allege "property damage" triggering the initial grant of coverage under the Fireman's Fund and Zurich policies, the district court erred. 2007-0251 at pp. 9-10, 969 So.2d at 660.
With respect to the delay damage claims, Fireman's Fund and Zurich rely on Fed. Ins. Co. v. New Hampshire Ins. Co. , 439 Fed.Appx. 287 (5th Cir. 2011) (citing
Data Specialties, Inc. v. Trans. Ins. Co. , 125 F.3d 909 (5th Cir. 1997) ) and First Horizon Ins. Co. v. Int'l Surplus Lines Ins. Co. , No. 87-3616, 1989 WL 132856 (E.D. La. Oct. 31, 1989) for the proposition that the policy language "legally obligated to pay as damages" applies only to tort-based obligations, not obligations arising from breach of contract such as contract price or delay damages. We are not persuaded by the reasoning in either case. First Horizon is distinguishable because there were no allegations of physical damage to property in that litigation. Fed. Ins. Co. relies on a federal appellate case applying Texas law and merely makes an "Erie guess" as to Louisiana law; we have identified no reported Louisiana cases *1044 adopting Zurich's and Fireman's Fund's interpretation of Fed. Ins. Co. on this issue.[4]
Similarly, Zurich and Fireman's Fund rely on a line of cases decided by the United States Fifth Circuit Court of Appeals to suggest that that rent concessions, lost income, and damage to Rice Mill's business reputation are not "property damage." See Selective Ins. Co. of Southeast v. J.B. Mouton & Sons , 954 F.2d 1075, 1079-80 (5th Cir. 1992) (equating policy language of "tangible property" to the Louisiana concept of "corporeal property" and rejecting the argument that, under Louisiana law, the loss of possible future income or profits, or the loss of use of that income, constitutes a loss of tangible property); Lamar Advert. Co. v.Cont'l Cas. Co. , 396 F.3d 654, 662 (5th Cir. 2005) (loss of anticipated or possible income was not loss of tangible property);
DeLoach v. HGI Catastrophe Servs., L.L.C. , 460 Fed.Appx. 314, 317 (5th Cir. 2012) ("reputation is not tangible property, and the purely economic losses resulting from damage thereto are not 'property damage' within the meaning of the [CGL] policy"). We find each of these federal appellate cases distinguishable, however, because, in each case, the party seeking coverage did not allege a physical injury to or destruction of any tangible property.
By depicting Rice Mill's claims as solely involving incorporeal, economic losses, Fireman's Fund and Zurich ignore that Rice Mill has alleged that defective construction resulted in, not only economic losses to its income, reputation, and from delays in construction, but also physical injury to tangible property - the apartments.[5] "As our case law presupposes that '[a] [ ] complaint against the insured is examined with the assumption that all the allegations are true,' " we disagree with Fireman's Fund and Zurich and find that, in addition to economic losses, Rice Mill has sufficiently alleged property damage to the apartments, thereby triggering the initial grant of coverage under the applicable Fireman's Fund and Zurich policies. See Stewart , 2007-0251 at p. 12, 969 So.2d at 661-62 (internal citations omitted).
Ordinarily, having reached this conclusion as to the initial grant of coverage would not end our inquiry; we would next consider whether coverage is precluded by one or more of the policy exclusions. Thus, in the alternative, Fireman's Fund and Zurich seek this Court's determination of whether coverage for Rice Mill's claims for delay damages, loss of income/reputation, and rent concessions are precluded by the "impaired property" exclusion.[6]
It is evident from the record, however, that the district court did not reach the issue of whether the "impaired property" exclusion applied. The transcript of the June 16, 2016 hearing reflects that, after the district court found that the delay damages, loss of income/reputation, and rent concessions did not fall within the *1045 initial grant of the applicable policies' coverage, the district court made no finding as to whether the "impaired property" exclusion applied and stated on the record that the issue was moot. Having found that the district court erred in its conclusion as to the initial grant of coverage, the applicability of the "impaired property" exclusion warrants consideration and is not moot. We therefore reverse the district court's grant of partial summary judgment and remand this matter to the district court for further proceedings and for determination of whether the "impaired property" exclusion applies.
For these reasons, we reverse the October 10, 2016 judgment granting summary judgment as to the number of occurrences within the meaning of the applicable Westchester policies, as we find that Fireman's Fund did not meet its burden of proving two occurrences and was not entitled to judgment as a matter of law. We also reverse the October 20, 2016 judgment dismissing Rice Mill's claims for delay damages/liquidation damages, loss of income/business reputation, and rent concessions. We thus remand this case to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED

We recognize that the record lodged with this Court contains, within Fireman's Fund's exhibits to its motion, incomplete copies of the Westchester policies. Specifically, those policies are missing the page that provides the definition of "occurrence." No party objected to the introduction of the Westchester policies into evidence. All parties represent to this Court that the Westchester definition of "occurrence" is the same definition of "occurrence" provided in the Zurich policies, and no party raises the verbiage of that definition as an issue on appeal. We thus find that there is no genuine issue of material fact that the definition of "occurrence" is the same in both the Zurich and Westchester policies.

We are likewise not persuaded by the cases relied by the parties applying out-of-state law to determine whether certain consequential economic damages are excluded under the policies at issue.

"Under La. C.C.P. art. 852, the pleadings allowed in civil actions include "petitions, exceptions, written motions and answers." Stewart , 2007-0251 at p. 12, n. 8, 969 So.2d at 662 (citing Grimaldi Mechanical, L.L.C. v. The Gray Insurance Company , 2005-0695, p. 9 (La. App. 4 Cir. 6/2/06), 933 So.2d 887, 892. "Also, La. C.C.P. art. 1154 provides that amendments to the pleadings in order to conform to the evidence are proper." Id.

We recognize that pursuant to La. C.C.P. art. 2133(B), Fireman's Fund and Zurich were not required to file an answer to the appeal in order to assert, in support of affirmation of the judgment, "any argument supported by the record."