JAMES F. MCKAY III, CHIEF JUDGE
Plaintiff, Erika Mann ("Ms. Mann"), seeks review of the trial court's July 16, 2018 judgment, granting a motion for summary judgment in favor of defendant, Evanston *399 Insurance Company ("Evanston"), and denying Ms. Mann's cross-motion for partial summary judgment. For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
Ms. Mann entered into a contract with Tim Clark Construction ("TCC") to elevate her home. Work began on the project in the latter part of 2011. Ms. Mann has acknowledged that she noticed damages to her home almost immediately thereafter. TCC obtained a certificate of occupancy and completion on March 12, 2012. However, elevation studies performed at that time allegedly showed that the house was not elevated to proper levels.
On June 28, 2012, Ms. Mann notified TCC that it had not completed the project as agreed, that the work was improperly performed, and that the home failed inspection. TCC subsequently performed additional work in an attempt to remedy the issues and repair the damages.
On August 22, 2014, Ms. Mann filed a petition for damages alleging that TCC caused physical damages to her home and property, which caused her mental anguish. Ms. Mann later amended her petition to name TCC's various insurers, including Evanston.
TCC had a series of insurers; Evanston insured TCC from March 3, 2014, to March 3, 2015. Evanston's policy contains the commonly-used commercial general liability (CGL) form that includes coverage for bodily injury and property damage.
The Evanston policy is an "occurrence policy" requiring that the bodily injury and/or property damage occur during the policy period. In addition, the policy contains a pre-existing injury endorsement, excluding from coverage any damage or loss that occurred prior to the policy period. The policy provides, in pertinent part, as follows:
SECTION I - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" which may result....
* * *
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period;
The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy also contains the following endorsement:
PRE-EXISTING INJURY, LOSS OR DAMAGE EXCLUSION
THIS ENDORSEMENT CHANGES THE POLICY.
*400 The coverage under this policy does not apply to "bodily injury," "property damage," "personal damage," "personal and advertising injury," or any injury, loss or damage:
(A) which first occurred, began to occur, or is alleged to have occurred prior to, or is alleged to be in the process of occurring or occurring to any degree, as of the inception date of this policy;
or
(B) which is caused by or alleged to have been caused by incremental, continuous or progressive damage arising from an occurrence which first occurred, began to occur, or is alleged to have occurred prior to the inception date of this policy.
Evanston filed a motion for summary judgment, arguing that its policy precluded coverage for Ms. Mann's damages because the alleged damages did not occur during the March 3, 2014 to March 3, 2015 policy period. In support of the motion, Evanston introduced Ms. Mann's deposition wherein she testified that she noticed damages to her home shortly after it was lifted in the fall of 2011. Additionally, Evanston relied on Ms. Mann's amended petition, alleging that TCC's collection efforts, including a lien on the property in 2012, caused her much mental anguish. In sum, Evanston submits that Ms. Mann's property damages and mental anguish began to occur prior to their policy period.
Ms. Mann opposed the motion and filed a cross-motion for partial summary judgment against Evanston. The cross-motion asserts that Ms. Mann and her property were repeatedly exposed to harmful conditions created by TCC beginning in 2011 and continuing up through, at the earliest, October 2016, when TCC's expert inspected her home. The majority of Ms. Mann's claims set forth in the cross-motion concern the interpretation of the Evanston policy provisions.
Ms. Mann's cross-motion further asserts that Evanston was in bad faith because, in denying coverage, Evanston misrepresented the application of the policy to her damages in violation of La. R.S. 22:1973(B)(1)[1] . It must be noted that Ms. Mann did not assert a cause of action for bad faith misrepresentation against Evanston in her petition for damages. Fraudulent misrepresentation was only pled against TCC.
The trial court initially rendered judgment on September 12, 2017, in favor of Evanston, finding that the pre-existing injury endorsement in the policy was unambiguous and enforceable, and that the policy precluded coverage. Evanston was dismissed with prejudice. With regard to Ms. Mann's cross-motion for partial summary judgment, the trial court granted some of the requests for relief, denied others, and deferred some, presumably until trial.
*401 Ms. Mann appealed the September 12, 2017 judgment, which this Court vacated and remanded. See Mann v. Tim Clark Constr. LLC, 2017-0983, (La. App. 4 Cir. 5/23/18), 248 So.3d 504. In our opinion rendered on Ms. Mann's first appeal, we stated:
As noted by Mann, the district court's judgment is patently inconsistent. While it dismissed all of Mann's claims against Evanston with prejudice, it granted certain items of relief in Mann's favor under the Evanston policy. Evanston cannot be dismissed with prejudice while some of Mann's claims against it are retained.
This court cannot determine if the district court intended to grant partial summary judgment in Evanston's favor with regard to the pre-existing endorsement alone or dismiss all of Mann's claims against it. That the district court intended to grant a partial summary judgment in Evanston's favor is the only way to reconcile the inconsistencies in the judgment before us.
Id. at p. 3, 248 So.3d at 505 (emphasis in original).
Considering the inconsistencies identified in the trial court's ruling, we vacated the September 12, 2017 judgment and remanded for clarification. On remand, the matter was brought before the court on June 29, 2018, pursuant to Evanston's motion to clarify and amend the September 12, 2017 judgment to dismiss all of Ms. Mann's cross-claims. Ms. Mann filed an opposition to Evanston's proposed amended judgment, arguing that she be allowed to litigate her bad faith claims against Evanston.
Judgment was rendered on July 16, 2018, granting summary judgment in Evanston's favor and dismissing all of Ms. Mann's claims against Evanston with prejudice. It was further decreed that Ms. Mann's cross-motion for partial summary judgment filed against Evanston was denied in its entirety. Ms. Mann's appeal of the July 16, 2018 judgment is now before the Court.
LAW AND ANALYSIS
Standard of Review:
Appellate courts apply a de novo standard of review in considering lower court rulings on summary judgment motions. Arceneaux v. Amstar Corp. , 2015-0588, (La. 9/7/16), 200 So.3d 277, 281. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
As this Court held in Thebault v. Am. Home Assur. Co. , 2015-0800, p. 5 (La. App. 4 Cir. 4/20/16), 195 So.3d 113, 116-17 :
Interpretation of an insurance policy usually involves a legal question that can be resolved properly within the framework of a motion for summary judgment. Bonin v. Westport Ins. Corp. , 05-0886, p. 4 (La. 5/17/06), 930 So.2d 906, 910 ; Zeitoun v. Orleans Parish School Bd. , 09-1130, p. 3 (La. App. 4 Cir. 3/3/10), 33 So.3d 361, 364. An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co. , 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580. When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, a court lacks the authority to alter or change the terms of the policy under the guise of *402 interpretation. Louisiana Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co. , 93-0911 (La. 1/14/94), 630 So.2d 759, 764.
In this appeal, Ms. Mann asserts that the trial court erred in: 1) rejecting the exposure theory set forth in Cole v. Celotex , 599 So.2d 1058 (La. 1992) and its progeny; 2) failing to consider the pre-existing injury exclusion in light of Cole; 3) failing to understand that TCC's malicious prosecution of Ms. Mann was covered under Part B of the Evanston policy and was a separate and distinct insurable offense, which should not have been excluded by the pre-existing injury exclusion; and 4) failing to make clear that it was not dismissing Ms. Mann's bad faith claims.[2]
Assignments of Error No. 1 and 2 : Failure to apply Cole and its progeny.
Ms. Mann argues in these first two assignments of error that the trial court erred when it rejected the "exposure theory" set forth in Cole , and instead applied the "manifestation theory" to find that the Evanston policy did not provide coverage for her damages. Ms. Mann asserts that her property damage and mental anguish did not result solely from TCC's initial act of lifting her home. Rather, Ms. Mann submits that she sustained ongoing and progressive property damage and mental anguish as a result of both TCC's failure to perform the contract in good faith and the ongoing collections efforts. Thus, pursuant to the exposure theory, she argues that her damages continued to occur during the subsequent policy periods, including the Evanston policy. We find no merit in this assertion.
Discussing the two prevailing theories relating to the occurrence of property damage under contractual language in insurance cases, the Supreme Court has stated:
Cases interpreting whether an "occurrence" occurs during a policy period of insurance coverage have considered both the exposure theory and the manifestation theory.
Under the exposure theory, damage would be considered to have occurred when the act which resulted in the damage took place, not when the damage was discovered. Thus, where damage develops over a period of time from continuous or repeated exposure to injurious conditions, courts have determined that the occurrence took place either at the inception of the exposure period or continuously during the entire course of exposure, as in asbestos cases . Even where the damage or injury was not manifested until after an insurer's policy period, if the insurer's policy period fell either at the inception or during the course of exposure, the insurer would be liable.
Under the manifestation theory, property damage would be considered to have occurred when it became manifest, regardless of when the act from which it resulted occurred. Oxner v. Montgomery , 34,727, p. 11 (La. App. 2 Cir. 8/1/01), 794 So.2d 86, 93, writ denied , 2001-2489 (La. 12/7/01), 803 So.2d 36, citing *403 Korossy v. Sunrise Homes, Inc. , 94-473 (La. App. 5 Cir. 3/15/95), 653 So.2d 1215, writs denied , 1995-1536 (La. 9/29/95), 660 So.2d 878, 1995-1522(La. 9/29/95), 660 So.2d 878.
Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 2010-2267, p. 42 (La. 10/25/11), 79 So.3d 246, 278, n.75 (emphasis added).
As further explained by the First Circuit Court in St. Paul Fire & Marine Ins. Co. v. Valentine, 95-0649, p. 5 (La. App. 1 Cir. 11/9/95), 665 So.2d 43, 46,
In Cole the Supreme Court did adopt the exposure theory as the trigger for coverage for claims brought by plaintiffs who had suffered long-term exposure to asbestos. However, in reaching this result, the Court noted several times "[t]he uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts...." Cole , 599 So.2d at 1065.
In Lafayette Ins. Co. v. C.E. Albert Const. Co., Inc., 95-0048, (La. App. 4 Cir. 9/15/95), 661 So.2d 1093, 1096, this Court refused to apply the rationale of Cole where the property damage resulting from a defective product did not occur during the policy period. This reasoning was also followed in James Pest Control, Inc. v. Scottsdale Insurance Company , 99-1316 (La. App. 5 Cir. 6/27/00), 765 So.2d 485, which held that the manifestation of termite damage triggered insurance coverage.
In Rando v. Top Notch Properties, L.L.C., 2003-1800, p. 18 (La. App. 4 Cir. 6/2/04), 879 So.2d 821, 833, this Court surveyed the jurisprudence relating to the issue of the trigger of coverage in CGL policies for construction defects, noting that "the clear weight of authority in more recent cases" supported use of the manifestation theory.
Considering the characteristics of the damages alleged by Ms. Mann and the relevant provisions of the Evanston policy, we believe that the manifestation theory is applicable to determine whether the Evanston policy is triggered. Thus, we find Ms. Mann's reliance on Cole and the exposure theory is misplaced.
Next, we turn to Ms. Mann's assertion that the Evanston policy's pre-existing injury exclusion is ambiguous (because it conflicts with the declarations page), inapplicable (because it conflicts with Cole ) and against public policy.
In Gibbs Construction, L.L.C. v. National Rice Mill, L.L.C. , 2017-0113, pp. 11-12 (La. App. 4 Cir. 2/21/18), 238 So.3d 1033, 1041-42, this Court recently reiterated the well-established principles on the interpretation of insurance policies, as follows:
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. See La. C.C. art. 1983. Moreover, an insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. Supreme Services [and Specialty Company, Inc. v. Sonny Greer, Inc. , 06-1827, p. 5 (La. 5/22/07), 958 So.2d 634, 638 ]; Reynolds , 634 So.2d at 1183 ; La. C.C. arts. 2045 - 2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. See La. C.C. art. 2046 ; Rando v. Top Notch Properties, L.L.C. , 03-1800 (La. App. 4 Cir. 6/2/04), 879 So.2d 821. Courts are not at liberty to alter the terms of insurance policies that are unambiguous. Edwards v. Daugherty , 03-2103 (La. 10/1/04), 883 So.2d 932. However, if any doubt or ambiguity exists as to the meaning of a provision in an insurance *404 policy, it must be construed in favor of the insured and against the insurer. See La. C.C. art. 2056. When the ambiguity relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Borden, Inc. v. Howard Trucking Co., Inc. , 454 So.2d 1081, 1090 (La. 1983) ; Williamson v. Historic Hurstville Ass'n , 556 So.2d 103, 107 (La. App. 4 Cir. 1990).
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Yount v. Maisano , 627 So.2d 148, 151 (La. 1993). However, it is well-settled that, absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. Supreme Services , supra at p. 6, 958 So.2d at 638-639 ; Reynolds , 634 So.2d at 1183 ; Marcus v. Hanover Insurance Co., Inc. , 98-2040, p. 4 (La. 6/4/99), 740 So.2d 603, 606. In these circumstances, unambiguous provisions limiting liability must be given effect. Supreme Services , supra at p. 6, 958 So.2d at 639. Only if the language can reasonably be read to have more than one reasonable meaning can the language be said to be ambiguous. Rando , supra at p. 3, 879 So.2d at 825. Whether a contract provision is ambiguous is a question of law. Pope v. Khalaileh , 05-0027, p. 5 (La. App. 4 Cir. 6/1/05), 905 So.2d 1149, 1152. Moreover, [the insurer] bears the burden of proving that a loss falls within a policy exclusion. Blackburn v. National Union Fire Ins. Co. , 00-2668, p. 6 (La. 4/3/01), 784 So.2d 637, 641 ; Rando , supra at p. 3, 879 So.2d at 825.
In the present case, the language of the pre-existing injury exclusion is clear. It provides no coverage for damages that first occurred or began to occur prior to the policy's inception date. We find no ambiguity in that language, nor do we find that the exclusion conflicts with any other provision of the policy. Ms. Mann argues that the policy is ambiguous because the exclusion is inconsistent with the policy's declaration page, which provides no retroactive date. Evanston counters, asserting that there is no retroactive date listed because the policy declarations make clear that the policy is an "occurrence policy," providing coverage only for occurrences which happen during the policy period. We agree with Evanston's assertion and reiterate our finding that the policy is clear and unambiguous.
Finally, Ms. Mann asserts that the exclusion violates public policy by trying to circumvent Cole . However, Ms. Mann has provided no authority for her position that the Evanston policy is against public policy, nor do we find anything in the exclusion that violates the public policy of Louisiana.
For the foregoing reasons, we find no merit in Ms. Mann's first two assignments of error. Pursuant to the manifestation theory, which we submit is proper here, the Evanston policy does not provide coverage for the property damage and emotional distress that manifested prior to the policy period. As stated above, Ms. Mann acknowledged that the property damages and mental anguish began to occur in 2011 and 2012, which pre-dated the March 3, 2014 inception date of the Evanston policy.
Assignment of Error No. 3 : Failure to recognize that the Evanston policy provided coverage for Ms. Mann's malicious prosecution claim.
Ms. Mann submits that two acts of malicious prosecution occurred during the Evanston policy period: 1) an April 17, 2014 collection letter from TCC, demanding amounts due under the contract; and 2) TCC's December 4, 2014 reconventional demand alleging amounts due by Ms. Mann under the contract.
*405 Ms. Mann asserts that these acts of malicious prosecution were covered under "Coverage B" of the Evanston policy and were separate and distinct insurable offenses, which should not have been excluded by the pre-existing injury exclusion.
Coverage B provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The policy's definition of "personal and advertising injury" includes malicious prosecution.
Evanston counters, arguing that the 2014 collection letter and reconventional demand were simply a continuation of TCC's attempts to collect a debt allegedly owed by Ms. Mann. We agree.
The record confirms that TCC began its collection efforts prior to the Evanston policy period. Moreover, Ms. Mann acknowledged in her cross-claim that she suffered mental anguish from the 2012 collection letter and lien. As with the property damage claims discussed above, the pre-existing injury exclusion, which applies to the entire policy, also precludes coverage for the continuation of Ms. Mann's mental anguish that began to occur prior to the Evanston policy.
We also note from our review of the record that Ms. Mann never pled malicious prosecution in her petition for damages and never raised the claim in her cross-motion for partial summary judgment. For these reasons, we find that the trial court did not err in failing to recognize Ms. Mann's malicious prosecution claim.
Assignment of Error No. 4: Failure to state whether Ms. Mann's bad faith claims were dismissed.
In her final assignment of error, Ms. Mann alleges that the trial court erred in failing to make clear that it was not dismissing her bad faith claims. This assignment of error is without merit.
The July 16, 2018 judgment states:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Summary Judgment is GRANTED in Evanston's favor, dismissing all of Plaintiff's claims against Evanston, with prejudice.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff Erika Mann's Cross-Motion for Partial Summary Judgment is DENIED .
In ruling from the bench, the trial court stated:
When considering Ms. Mann's bad faith claims, the Court agrees with Evanston that the Court could not consider any bad faith claims against Evanston because no such claims were pled by Ms. Mann in her petition. [citing La. C.C.P. art. 966(A)(1) ]. Since Ms. Mann did not pray for bad faith against Evanston in her petitions, said claims, including the deferred ones, are not properly before the Court for summary judgment.
It is clear from a review of the pleadings that Ms. Mann failed to allege any bad faith claims against Evanston. Pursuant to La. C.C.P. art. 966(A)(1), "[a] party may move for a summary judgment for all or part of the relief for which he has prayed." The trial court correctly denied summary judgment on Ms. Mann's bad faith claims, which were alleged for the first time in her cross-motion for partial summary judgment. Moreover, contrary to Ms. Mann's assertions, the record reflects that the trial court denied Ms. Mann's cross-motion for partial summary judgment in its entirety and declined to consider the bad faith *406 claims because they were never pled. The trial court's judgment is clear.
CONCLUSION
For the foregoing reasons, we find no merit in any of Ms. Mann's assignments of error. Accordingly, we affirm the trial court's judgment granting summary judgment in favor of Evanston and in denying Ms. Mann's cross-motion for partial summary judgment.
AFFIRMED

La. R.S. 22:1973 provides in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

In addition to these four assignments of error, Ms. Mann attempts to bring up newly discovered evidence concerning TCC's alleged illegal joint venture activities as a reason to reverse the trial court's judgment. It does not appear that Ms. Mann sought a new trial based on newly discovered evidence. "As a general rule, appellate courts will not consider issues raised for the first time in this court, which are not pleaded in the court below and which the district has not addressed." Geiger v. State ex rel. Dept. of Health and Hosp. , 2001-2206, p. 10 (La. 4/12/02), 815 So.2d 80, 86 (internal citations omitted). Ms. Mann's claims raised for the first time on appeal are not considered herein.